Dinah M. KEE, Plaintiff,

v.

NEC TECHNOLOGIES, INC., Defendant.

No. 95 C 3313.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 2, 1997.

Order Supplementing Decision
Jan. 3, 1997.

Charles F. Stone, Chicago, IL, for Plaintiff.

Brian W. Bulger and Robin B. Edelstein, Bates, Meckler, Bulger & Tilson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

On September 26, 1996 this Court issued its memorandum opinion and order (the "Opinion"), in which it granted the summary judgment motion of NEC Technologies, Inc. ("Nectech") in this action brought by its employee Dinah Kee ("Kee") to charge Nectech with employment discrimination and related retaliatory treatment. Since the entry of the judgment of dismissal, Nectech has filed motions for an award of attorneys' fees (Dkt.38–1) and for the assessment of taxable costs (Dkt.37–1), and Kee has countered with motions in oppositions to both requests (Dkt. 43–1 as to fees and Dkt. 42–1 as to costs).

Both sides have briefed the issues posed by the cross-motions,[1] including the inquiry posed by this Court as to the propriety of a partial award under all of the circumstances. For the reasons stated in this memorandum opinion and order, each side's motions are granted in part and denied in part.

### Taxable Costs

■ Kee does not suggest that she is entitled to relief from the payment of taxable costs on grounds of inability to pay as such (more on this subject later), and no reason is really advanced for her being relieved of the normal Fed.R.Civ.P. 54(d)(1) doctrine that the successful litigant ordinarily recovers taxable costs. Instead Kee's Mem. 1 on the subject of costs "respectfully requests the Court to assess only those costs against plaintiff Kee which were reasonable and necessary expenses based upon the Court's entry of summary judgment in favor of Nectech, pursuant to 28 U.S.C. § 1920," and Kee's Mem. 5 concludes by acknowledging the propriety of the $2,830.70 in deposition costs incurred by Nectech.

All that Nectech seeks in addition to those deposition costs is the reimbursement of photocopying expense. Its December 4 response to Kee's objections explains (1) that the requested $.12 per page is only 60% of Nectech's law firm's usual $.20 per page charge to its clients and (2) that the request is being cut back to the number of pages that it copied after February 28, 1996, which it labels as "the latest possible date which confirmed the fact that [Kee's] claims were frivolous" (Response at 2).

This Court finds that Nectech's modified request is reasonable, and it relatedly rejects Kee's blanket objections to the photocopying costs as assertedly lacking in substantiation. Accordingly taxable costs are awarded in favor of Nectech and against Kee in the sum of $3,543.98.

### Attorneys' Fees

■ Ever since *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), it has been clear that 42 U.S.C. § 2000e–5(k) is not reciprocal in its operation—that although most prevailing plaintiffs in employment discrimination litigation may expect to receive attorneys' fee awards as a matter of course, prevailing defendants may not. As *Christiansburg, id.* at 418, 98 S.Ct. at 699 explained:

> And a moment's reflection reveals that there are at least two strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant.

---

1. Kee has changed lawyers during the post-judgment proceedings, and her counsel has also filed a Notice of Appeal from this Court's order dismissing this action.

**664**

After analyzing those considerations, *Christiansburg, id.* at 421, 422, 98 S.Ct. at 700, 701 completed the analysis by outlining the operative rules:

> In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> \* \* \* \* \* \*
>
> Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

As the Opinion makes exceedingly plain, those restrictive standards squarely encompass Kee's situation. Even when the most favorable evidentiary light is cast on her claims (as the Opinion did), it remains true that her failure-to-promote claim was unquestionably frivolous (in the legal sense of that word) in both factual and legal terms, that her hostile work environment claim never got out of the blocks, and that her retaliation claim patently suffered fatal defects as well.

There is thus no question that Nectech has established its right to an award—instead the question comes down to quantifying its recapture of the attorneys' fees that it has incurred. Nectech's claim in that respect is not out of line: It limits its request to lawyers' time spent after Kee's February 28 deposition, when it became clear both that she was addressing a failure-to-promote claim and that each of her claims was both legally and factually insupportable. Although this Court has no reason to doubt Kee's sincerity in having advanced those claims (that is, her *subjective* good faith is not in question), the circumstances described in the Opinion demonstrate that her claims were objectively "frivolous" in the legal sense of that term for *Christiansburg* purposes.

Like other appellate courts, our Court of Appeals has made it plain that a district court's decision as to such fee awards is equitable in nature, allowing consideration of the litigants' relative wealth and of what—after looking at plaintiff's financial circumstances—may be required to serve the deterrence goals of such awards. *Munson v. Friske,* 754 F.2d 683, 697 (7th Cir.1985) exemplifies the relevant principles:

> The courts have held that fee awards are an equitable matter, thereby permitting the district court to consider the relative wealth of the parties. *See e.g., Faraci v. Hickey–Freeman Co.,* 607 F.2d 1025, 1028 (2d Cir.1979). When a court determines that a plaintiff can afford to pay the award, the congressional goal of discouraging frivolous litigation demands that the full fees be levied.

And *Faraci,* 607 F.2d at 1029 (adapted to this case) in turn counsels:

> In determining the size of the award, the court below should have ascertained whether, in light of [Kee's] ability to pay, a lesser sum assessed would have fulfilled the statute's deterrent purpose without subjecting [her] to financial ruin. Moreover, the plaintiff's degree of good faith in prosecuting the action should have also been considered.

In this instance Kee has provided detailed financial information about herself and her marital community with her husband (her affidavit is attached as Ex. 1 to this opinion). No precise formula establishes the point at which the deterrence line spoken of in *Munson, Faraci* and like cases crosses the undue-financial-hardship line. It is worth noting, however, that *Christiansburg* itself (434 U.S. at 421, 98 S.Ct. at 700) approved the concept embodied in the Second Circuit's opinion in *Carrion v. Yeshiva Univ.,* 535 F.2d 722, 727 (2d Cir.1976), and that *Faraci,* 607 F.2d at 1028 spoke favorably of the $5,000 fee awarded in that *Carrion* case against the unsuccessful (and incidentally vindictive) plaintiff who was then employed at a $25,000 annual compensation level.

This Court has concluded that applying the same kind of 20% ratio that was applied in *Carrion* best fulfills the statutory goals here. Although Kee's affidavit discloses her to be a marital partner in a two-income family, the other factors that are described in her affidavit cause that consideration to be given only

moderate weight—and weighed against that is the factor that she has not been shown to share the type of vindictive motivation that was present in *Carrion.* Accordingly Nectech's motion is granted to the extent that Kee is ordered to pay, in addition to taxable costs, the sum of $8,200 (20% of her annual income from Nectech) as partial reimbursement of the attorneys' fees incurred by Nectech.

### Conclusion

Kee is ordered to pay to Nectech the sum of $3,543.98 as taxable costs plus $8,200 as partial reimbursement of attorneys' fees, or a total of $11,743.98. It is apparent from Kee's affidavit that she is capable of meeting that obligation only on an installment basis, unless it is possible for her to make a lump-sum withdrawal from her pension/retirement account or her 401K account or both without having to violate the terms of any relevant plan documents or having to bear a tax penalty for such withdrawal (this Court has not been provided with any information in either such respect). Accordingly the parties are directed to confer as to an appropriate means of Kee's satisfying the total obligation established here, and to report back to this Court promptly, either with the results of their agreement on that score or with submissions that will enable this Court to specify the method and time of repayment.

### EXHIBIT 1

### *DINAH M. KEE's*

### *AFFIDAVIT OF FINANCES*

DINAH M. KEE, being first duly sworn upon oath, deposes and states as follows:

1. That I am the plaintiff in the above-captioned case, I have personal knowledge of the matters discussed in this Affidavit and could testify competently thereto if called as a witness.

2. That I am married to Calvin Wilson, and have a two-year-old daughter with him, Jewelle. In addition, I have a 10–year–old daughter, Brittany, from a previous marriage, who lives with us and whom I support.

Brittany's father has not paid child support in approximately six years.

3. That I am employed by defendant, earning an annual salary of approximately $41,000.00.

4. That I currently have the following debts and payments:

    a. Credit card balances totaling $11,-881.14 as of December 1, 1996;

    b. A house mortgage with my husband with an opening balance of $145,943.61 in January, 1995; I pay one-half of the monthly payments of $1,516.00;

    c. Monthly lease payments on my van of $439.71.

5. That I have the following bank accounts, 401–K and retirement accounts:

    a. A checking account with approximately $100.00;

    b. A savings account with $159.88;

    c. A savings account with my daughter, Brittany, with $326.87;

    d. A checking account with my out-of-state brother, for his convenience; I deposited $50.00 to open the account in October, and there have been no other deposits or withdrawals;

    e. A pension/retirement account with a balance of $24,017.05 through my employer;

    f. A 401K account with a balance of $10,-162.53 through my employer.

6. For the sake of completeness, that my husband is employed with an annual salary of approximately $35,000, plus small additional earnings from a part-time job. He pays child support for two daughters who do not live with us. On information and belief, the payments approximate $300.00 per month.

FURTHER AFFIANT SAYETH NOT.

    /s/ Dinah M. Kee

### *SUPPLEMENT TO MEMORANDUM OPINION AND ORDER*

Immediately after this Court's issuance of its January 2, 1997 memorandum opinion and order ("Opinion II") that awarded attorneys' fees and taxable costs to NEC Technologies,

Inc. ("Nectech") in this action brought against it (with a total lack of success) by its employee Dinah Kee ("Kee"), Kee's counsel called this Court's chambers to ask whether this Court had given consideration to the document filed on December 23 captioned "Plaintiff's Objections to Defendant's Itemized Petition for Fees and Costs."[1] This Court had assumed that it was apparent from Opinion II—focusing as it did on the economic impact on Kee of such an award, rather than on what might be required for fully compensatory fee-shifting to make Nectech whole—that this Court had indeed considered Kee's December 23 filing but had found it irrelevant to the ultimate decision. Because of the inquiry by Kee's counsel, however, this supplement to Opinion II will explain that in a bit more detail.

Opinion II at 4 reflected that Nectech had limited its claim for attorneys' fees "to lawyers' time spent after Kee's February 28 deposition, when it became clear both that she was addressing a failure-to-promote claim and that each of her claims was both legally and factually insupportable." Even so, the fees actually incurred and paid for by Nectech since that date aggregated a very large sum indeed: $46,479. Most of the time involved was expended by Robin Edelstein, a 1993 law school graduate whose time was billed at $120 per hour, and by her supervisory attorney Brian Bulger, a 1977 law school graduate whose time was billed at $250 an hour.[2]

Kee's objections adopted a shotgun approach, challenging a whole host of matters: the asserted absence of adequate supporting affidavits by the lawyers involved; a lack of any itemization of the time spent on a claim-by-claim basis; assertedly unnecessary work on Kee's failure-to-promote claim; excessive and duplicative work (including allegedly excessive supervision, excessive layers of corporate bureaucracy and redundancy in super-

vising and litigating the matter); the alleged failure to specify a point at which Kee knew or should have known that continuing the case was frivolous; an attack on any recovery for Kee's retaliation claim, "which clearly was not frivolous"; the impermissibility of reimbursement for paralegal time; and a failure of adequate proof as to photocopying costs. Many of those challenges are patently unsound—but more importantly, they need not be addressed here in those terms for the reason next set out here.

Where a court is required to parse fee applications in detail, something that unfortunately occurs all too frequently in fee-shifting situations, satellite litigation often ensues—generating inevitably increased costs to one or both sides of the lawsuit. This Court has frequently characterized such wasteful off-shoots of the litigation process by quoting Dean Jonathan Swift's lines from his *On Poetry, A Rhapsody:*

So, naturalists observe, a flea

Hath smaller fleas that on him prey;

And these have smaller still to bite 'em;

And so proceed *ad infinitum.*

That flea-biting process and its unfortunate consequences have been avoided here. Because Opinion II looked not at the global request made by Nectech, but rather at the much lesser amount that would serve the statutory goals of partial fee-shifting without at the same time impoverishing Kee, Nectech has been required to swallow the large bulk of what its lawyers have charged. Even if Kee's attacks had been followed through in detail, there is no way in which this Court would have granted the ultimate over-reaching demand by Kee's counsel for the *total* denial of any award of attorneys' fees and costs. At worst there might have been a material reduction from Nectech's approximately $50,000 aggregate request for fees and costs, but from this Court's close knowledge of the case as gleaned from the opinion

---

1. That document was submitted by Kee's new counsel contemporaneously with "Plaintiff's Memorandum of Law Regarding Partial Awards of Attorney's Fees to Prevailing Defendants."

2. Among the items disputed by Kee's counsel is the reasonableness of those hourly rates. For reasons explained in this supplement, this Court

has not dealt, and it need not deal, in any detail with that question or with the reasonableness of the various individual time entries—but based on this Court's knowledge of the counsel involved and of the prevailing rates in the community, there is really no basis for quarreling with the hourly rates requested here.

that it issued on the merits, there is no way in which any such reductions could have brought the compensable amount down to a figure that came even close to the approximate $11,500 total that has been awarded by Opinion II.

Accordingly Opinion II should in no way be misunderstood as having been issued without considering *everything* that had been advanced on Kee's behalf, including both December 23 filings. Instead the chore of dealing with Kee's stated objections on an individualized basis would have been pointless— it would simply have added to the time investment that has been occasioned by Kee's persistent pursuit of her objectively frivolous claims.